UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE RAY MOORE,

       Plaintiff,

v.

COUNTRYSIDE CARE CENTER, INC.,
and SECURE HOME SERVICES, LLC,

       Defendants.

_____/

CASE NO. 2:13-cv-15254

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

      This matter is before the Court on Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6).  (Doc. 16.)  Defendants argue that Plaintiff's First Amended Complaint fails to allege facts sufficient to make a prima facie showing of employment discrimination, retaliation, and violation of the Workers' Disability Compensation Act of 1969.  Plaintiff contends that all elements of these claims have been pleaded.  For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

**II.   STATEMENT OF FACTS**

      Beginning February 28, 2011, Plaintiff was employed as a dietary aide by Defendant Secure Home Services, LLC ("SHS"), an assisted living facility within the Countryside Retirement Community.  Plaintiff alleges that he began to encounter difficulties with one of the residents at the facility.  This resident, Jim, continually directed offensive racial comments toward Plaintiff and harassed him as he attempted to carry out his work duties.  For example, Plaintiff alleges that Jim referenced finding a

"good strong rope" and a "tall tree" and that he intentionally spilled hot coffee on his arm, which was reported to the police.

In spite of Plaintiff's multiple complaints about Jim's behavior to supervisor Cheryl DeVaughn and to SHS Director Scott Claw, the harassment continued. DeVaughn allegedly denied that anything could be done to correct the problem, later issuing Plaintiff a written reprimand after an altercation with Jim. Plaintiff states that DeVaughn also harassed him in an effort to make him quit; specifically, Plaintiff claims that she assigned him additional duties not assigned to other dietary aides.

In October 2012, Plaintiff met with DeVaughn, the new SHS Director Sandra Bailey, and Human Resources Director Casie Miller. All parties ultimately agreed that Plaintiff would be transferred to a position performing the same duties at Countryside Care Center, Inc. ("CCC"), a different, long-term facility within the community. Because Plaintiff was transferred to a long-term facility, he was required to submit to a fingerprinting background check in accordance with Michigan law. However, he was allowed to start working at CCC right away on a conditional basis, pending the results of the background check.

On October 31, 2012, Plaintiff alleges that he slipped and fell while at work, fracturing his knee. Although not alleged in the Complaint, Defendants state that Plaintiff has filed a claim for workers' compensation benefits, which is being disputed and is still pending.

On November 20, 2012, Miller was notified by the State of Michigan that Plaintiff was ineligible to work in a long-term facility until March 29, 2016, because of a prior felony conviction. As a result, Plaintiff's employment was terminated. Plaintiff claims in

2

his response brief that he had disclosed this felony conviction to SHS upon his initial hiring in 2011. He further alleges in his response that Defendants, knowing that he would be found ineligible, transferred him to CCC with the intention of terminating his employment. On September 27, 2013, Plaintiff's claim before the Equal Employment Opportunities Commission ("EEOC") was denied. (Doc. 1, Ex. 1.) In the present action, filed December 26, 2013, Plaintiff has stated claims against Defendants for retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Elliot-Larsen Civil Rights Act ("ELCRA"); unspecified violations of the ELCRA; and retaliation in violation of the Workers' Disability Compensation Act ("WDCA").

Defendants filed a previous motion to dismiss challenging the Court's jurisdiction over the workers' compensation claim, as well as whether Plaintiff sufficiently stated a claim under the WDCA. On April 25, 2014, this Court entered an order denying this motion. (Doc. 11.) The Court also ordered Plaintiff to provide a more definite statement of all claims and to join all relevant parties. Plaintiff has since filed an amended complaint adding CCC in place of Countryside Retirement Community. The amended complaint states that Plaintiff is charging both SHS and CCC as joint employers, as he cannot presently determine the appropriate party to charge. The substance of the claims, however, has not been amended or clarified whatsoever.

### III.   STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Rule 12(b), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S., 544, 570 (2007)). A claim that is plausible "pleads factual content that allows the court to draw the reasonable inference" and demonstrates "more than a sheer possibility" that the plaintiff's claim has merit. Id. A complaint that offers "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Id. While a court must accept as true all factual allegations set forth in a plaintiff's complaint, it is not bound to accept as true a legal conclusion or a legal conclusion couched as a factual allegation. Id. All legal conclusions must be supported by the factual allegations. Id. at 679.

In deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Further, the Sixth Circuit has found that courts may consider documents not formally incorporated by reference but that are referred to in the complaint and are central to the plaintiff's claim. See Greenberg v. Life Ins. Co., 177 F.3d 507, 514 (6th Cir. 1999).

**IV. DISCUSSION**

    **A. Retaliation**

Courts construe claims arising under Title VII and ELCRA in the same manner. See, e.g., McKinley v. Skyline Chili, Inc., 534 Fed. App'x 461, 467 (6th Cir. 2013); Pena v. Ingham Cnty. Rd. Comm'n, 255 Mich. App. 299, 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003). Title VII prohibits an employer from "discriminat[ing] against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Although many courts have applied the McDonnell Douglas framework when deciding motions to dismiss claims of employment discrimination and retaliation, such application is inappropriate at this stage. See Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012). The Supreme Court has held that the prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading requirement. Id. (citing Swierkiewicz v. Sorema, 534 U.S. 506, 510 (2002). The subsequent decisions in Twombly and Iqbal have not altered this holding. Id.

Plaintiff's First Amended Complaint ("Complaint") details consistent racial harassment by one of Defendants' residents, as well as Defendants' initial lack of response to Plaintiff's repeated complaints. The response brief clarifies that Plaintiff's complaints of harassment to management are the protected activity alleged. Defendants have argued that insufficient detail was provided regarding the substance of these complaints to determine their status as protected activity. However, the Complaint does describe at some length the fact that Plaintiff reported altercations with Jim to his supervisor and a director. Employee activity qualifying as protected activity, according to the EEOC, includes "[c]omplaining to anyone about alleged discrimination against oneself or others." EEOC Compliance Manual, Vol. 2, Section 8-IIB, *available at* http://www.eeoc.gov/policy/docs/retal.html.

Despite the fact that the racial harassment was propogated by a resident/customer and not the employer itself, the Defendants may be held liable if they knew or should have known about the conduct and failed to take prompt and appropriate corrective action.  See EEOC Compliance Manual, Section 15-VII, (A)(3), Employer Liability, *available at* http://www.eeoc.gov/policy/docs/race-color.html#VIIA3worker.  In the context of sexual harassment, employers have been held liable in other circuits for harassment by non-employees, including customers, clients, and patrons.  See, e.g., Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1073 (10th Cir. 1998); Ligenza v. Genesis Health Ventures of Mass., 995 F. Supp. 226, 230 (D. Mass. 1998) (finding that a nursing home may be held liable for patient misconduct when the employer has the requisite knowledge and control over the situation and fails to take remedial action).  Therefore, by reporting the racial harassment by Jim to management, Plaintiff was engaged in activity protected by Title VII.

The Complaint alleges that Plaintiff was terminated from his employment with CCC based on the results of his background check.  It also alleges that he disclosed his past felony conviction to Defendants upon his initial hire with SHS and that a fingerprint background check was performed at this time.  The response brief clarifies that the specific retaliatory act taken by Defendants was "transferring him from a position where he was qualified to a position where he was unqualified and could be terminated," with the knowledge and intention that he would be terminated.  (Doc. 18, pp. 9-10.)  No such conspiracy allegation is set forth in the Complaint, and Defendants were not on notice of this theory until they received Plaintiff's response.  Nevertheless, Defendants availed

6

themselves of the opportunity to respond to this theory in their reply brief.  Therefore, the Court will address the merits.

In determining this motion to dismiss, the Court must accept the facts as alleged by the Plaintiff.  However, even assuming that Plaintiff disclosed his prior felony conviction to Defendants and underwent a background check upon his initial hire, his allegation that Defendants were aware that his transfer would result in a termination is not plausible.  As Defendants assert, eligibility to work in a long-term facility is contingent on the precise felony committed.  Depending on the type and categorization of the felony, an employee may be prevented from working in a long-term care facility for ten years, fifteen years, or permanently.  See MICH. COMP. LAWS § 333.20173a.  Without knowledge of the date of Plaintiff's discharge from probation or parole and the exact type of felony committed, it would have been impossible for Defendants to know that he would be disqualified from working at CCC.  Plaintiff does not allege that he disclosed these specific details upon his initial hire.

The Complaint asserts that nothing has changed on Plaintiff's criminal record since he began to work at SHS.  Therefore, the disclosures made upon initial hire and upon transfer to CCC must be the same.  In the November 2012 disclosure statement associated with Plaintiff's background check, he indicated a previous felony conviction on April 10, 1996, with a date of discharge in 1999.  (Doc. 16, Ex. A.)  This disclosure does not indicate the exact type of felony.  Inconsequentially, the discharge date of 1999 appears to be inaccurate, given the background check results declaring Plaintiff's ineligibility to work in a long-term care facility until 2016.  Assuming that Plaintiff was disqualified for fifteen years, the earliest date of discharge would have been in 2001.

7

Based on the information Plaintiff disclosed, Defendants could not have known that Plaintiff would be disqualified from employment.  At best, Defendants would have been aware only of a possibility that Plaintiff would be disqualified.  Therefore, because Plaintiff has not pleaded a plausible claim of retaliation, this claim is dismissed.

### B. Racial Discrimination

Count II of the Complaint, entitled "Violations of the Elliot-Larsen Civil Rights Act," does not elucidate a more specific basis for liability, such as disparate treatment, hostile work environment, or a restatement of the retaliation claim.  The Complaint merely asserts that Defendants, through their agents and representatives, "treated Plaintiff differently from similarly situated non-black employees in the terms and conditions of employment, based on unlawful consideration of race."  (Doc. 12, ¶ 54.) Plaintiff's response brief does not address Defendants' contention that the Complaint is unclear, nor does it advance any argument in support of a racial discrimination claim distinct from retaliation.  At hearing, Plaintiff averred that Count I was intended to advance claims of both retaliation and racial discrimination pursuant to Title VII, while Count II states a claim of retaliation pursuant to ELCRA.  However, Plaintiff has continued to fail to refute any of Defendants' arguments in opposition to a racial discrimination claim.  Therefore, to the extent that Plaintiff alleged a racial discrimination claim at the outset, the Court finds that this claim has been abandoned.  See Brown v. VHS of Mich., 545 Fed. App'x 368, 372 (6th Cir. 2013) ("a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment"); Bazinski v. JPMorgan Chase Bank, N.A., No. 13-14337, 2014 U.S. Dist. LEXIS 50238 at * 5, (E.D. Mich. April 11, 2014) ("claims left to stand

undefended against a motion to dismiss are deemed abandoned"). Accordingly, any claim for racial discrimination is dismissed.

### C. Workers' Disability Compensation Act

The WDCA provides that, "[a] person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act . . . ." MICH. COMP. LAWS § 418.301(13) (2011). The analysis of WDCA claims has been guided by that for ELCRA retaliation claims. See Chiles v. Machine Shop, Inc., 238 Mich. App. 462, 470 (1999) (applying the ELCRA burden-shifting framework to a WDCA claim). Consequently, courts have found that plaintiffs need not establish a prima facie case of retaliation at the motion to dismiss stage. See Beaudin v. Wal-Mart Stores, Inc., No. 10-12072, 2010 U.S. Dist. LEXIS 71529 at *8-9 (E.D. Mich. July 15, 2010).

While Defendants correctly observe that Plaintiff failed to allege in the Complaint that he filed a workers' compensation claim, they admit that he did file a claim and that it is currently pending. (See Doc. 16, p. 10.) The Complaint asserts that "Defendants were pre-disposed [sic] to discriminate against workers who they deemed as costing too much in medical costs to the company." (Doc. 12, ¶ 58.) Plaintiff specifically alleges that Defendants' "discriminatory behavior has caused Plaintiff to be terminated from his position due to his injury on the job," and that they "began to harass and eventually terminated Plaintiff shortly after his injuries." (Doc. 12, ¶¶ 59-60.) Plaintiff fell on Defendants' premises on October 31, 2012, and on this date filed a report of injury with his employer. He thereafter submitted to a fingerprinting background check on

November 8, 2012.  (Doc. 16, Ex. A.)  On November 20, 2012, he was notified that his employment was terminated based on the results of this background check.

The facts alleged do not support Plaintiff's claim that his termination was a direct result of his filing a workers' compensation claim.  Plaintiff has shown a temporal proximity between his filing of the injury report on October 31, the fingerprinting performed on November 8, and the termination on November 20.  See Gullett v. Autoform, No. 281933, 2009 Mich. App. LEXIS 1165 at *3 (Mich. Ct. App. January 20, 2009) (considering temporal proximity as a factor tending to support a WDCA retaliation case).  However, Plaintiff does not refute that Defendants were legally required to perform a background check.  See MICH. COMP. LAWS § 333.20173a.  Plaintiff does not allege that the results of this background check were incorrect; in fact, he admits to having been convicted of a felony.  (See Doc. 18, p. 13.)  Further, Plaintiff does not respond to Defendants' contention that they were required by law to terminate Plaintiff from his position based on the results of his background check.  See MICH. COMP. LAWS § 333.20173a.  As such, even accepting as true the facts alleged by Plaintiff, his termination was mandated by state law based on the results of his legally required background check.  Therefore, he has not plausibly pleaded a retaliation claim associated with his workers' disability claim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** the present case.

**IT IS SO ORDERED.**

Date: August 19, 2014

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 19, 2014.

                                            s/ Kay Doaks
                                            Case Manager